# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ANTOINE BOUSLEY,

    Plaintiff

v.

MARLYN ALAMILLO, et al.,

    Defendants

Case No.: 2:17-cv-00486-APG-DJA

**Order (1) Granting Defendants' Motion for Summary Judgment and (2) Denying Plaintiff's Motion for Summary Judgment**

[ECF Nos. 23, 29]

    Plaintiff Antoine Bousley filed this lawsuit over two incidents that occurred while he was a prisoner at High Desert State Prison (HDSP). The screening order allowed the following claims to proceed: (1) due process against defendants Marlyn Alamillo[1] and Jessie Brightwell based on confiscation of pictures from Bousley's cell and (2) First Amendment retaliation against Alfonso Alvarez, Dario Sanchez, and John Doe correctional officer based on an alleged retaliatory cell search that left Bousley's cell in disarray. ECF No. 6.

    The defendants move for summary judgment. Bousley opposes and also moves for summary judgment. I grant the defendants' motion because no genuine dispute remains that Bousley does not have a due process claim against Alamillo and Brightwell and because Bousley failed to exhaust his administrative remedies against Alvarez, Sanchez, and John Doe.

**I. ANALYSIS**

    Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law."

---

[1] Alamillo married and legally changed her name after this incident. ECF No. 24 at 8. For consistency with the documents prepared at the time of the incident and at the beginning of this lawsuit, I will refer to her as Alamillo.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Due Process**

*1. Applicable Regulations*

Nevada Department of Corrections (NDOC) administrative regulation (AR) 422 governs searches and seizures in prison facilities. Under AR 422.01(1)(A)(8), contraband discovered during a search "will be seized and processed for appropriate disposal as required by law or regulation." ECF No. 24 at 33. HDSP Operations Procedure (OP) 409 provides that items taken from an inmate's cell during a search must be documented on a cell search log along with the reason why the items were taken. *Id.* at 68. Items that are contraband are to be taken to the evidence room. *Id.* at 75. Under OP 711, any inmate property that is not allowed at the prison may be confiscated. *Id.* at 84. The inmate is notified of the confiscation through use of an Unauthorized Property Disposal Form known as DOC 1517. *Id.* at 84, 104. DOC 1517 advises

the inmate what property was taken and gives the inmate various options for disposition of the property, including the option to appeal the confiscation decision through the prison's grievance process. *Id.* at 104.

### 2. *The Search of Bousley's Cell*

In February 2016, Bousley noticed that two photographs were missing from his cell.[2] ECF Nos. 7 at 6; 24 at 10. Bousley inquired about what happened and was told to speak to Alamillo and Brightwell. ECF No. 7 at 6. Alamillo admitted taking a photograph, stating she found it offensive. *Id.* Alamillo did not give Bousley a DOC 1517 nor did she file a notice of charges against Bousley even though she contended at least one of the photographs was contraband. *Id.* at 7.

Alamillo prepared an incident report documenting that she and Brightwell were conducting a cell search when she found a picture of a nude female "conducting penetration with her finger on herself. The picture was confiscated because penetration is against prison policy." ECF No. 24 at 5. In her affidavit, Alamillo states that she does not recall documenting the confiscation on a cell search log, issuing a DOC 1517 to Bousley, keeping the photograph described in the incident report, or placing it into the evidence room. *Id.* at 8.

Brightwell avers that he participated in the search of Bousley's cell, that during the search Alamillo found a photograph of a nude female penetrating herself with her finger, and that Alamillo confiscated the photograph. *Id.* at 30. Brightwell does not recall Alamillo documenting the confiscation on a cell search log, issuing a DOC 1517 to Bousley, or keeping the photograph. *Id.* Brightwell does not recall placing the photograph into the evidence room. *Id.*

---

[2] Bousley contends there were two photographs. Alamillo states she confiscated one photograph. Viewing the evidence in the light most favorable to Bousley, two photographs were confiscated. Regardless, this dispute is not material to the resolution of Bousley's due process claim.

3

Bousley grieved the seizure of his photographs, contending they were not contraband and noting that he was not given a DOC 1517. *Id.* at 10-11. In response to Bousley's informal grievance, Bousley was advised that the "shift supervisor was notified [about] the DOC 1517 not being issued following the [seizure] of your property. Corrective action will be taken in the future. Should you be in possession of any future [contraband] of this nature you will be issued a notice of charges and a disciplinary hearing supervisor will determine the outcome of any charge or sanction that may result." *Id.* at 12.

Alamillo and Brightwell admit they searched Bousley's cell, confiscated two photographs, and failed to follow prison regulations by not filling out the required paperwork and by failing to properly dispose of the photographs. They argue that because they failed to follow procedure, their confiscation and loss or destruction of the photograph was unauthorized. And they contend that where a state actor engages in the unauthorized loss or destruction of property, but there is an available post-deprivation state remedy to address that unauthorized deprivation, there is no due process violation. Bousley responds that the seizure was authorized because it was done pursuant to the prison regulations regarding confiscation of contraband and the defendants admit the photographs were properly seized as contraband.

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Where the deprivation occurred "as a result of the unauthorized failure of agents of the State to follow established state procedure," then the deprivation is unauthorized within

4

*Hudson*'s meaning. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Post-deprivation remedies are adequate in these circumstances because "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." *Hudson*, 468 U.S. at 533.

Here, no genuine dispute remains that Alamillo and Brightwell's conduct constituted an unauthorized failure to follow procedures in confiscating and disposing of Bousley's photographs. Although prison regulations allow for the confiscation of contraband, the defendants were required to document the confiscation on a cell search log, provide Bousley with a DOC 1517, and take the contraband to the evidence room. It is undisputed Alamillo and Brightwell failed to follow these established procedures and there is no evidence that their failure to do so was authorized. To the contrary, in response to Bousley's grievance, Alamillo and Brightwell's shift supervisor was told of their failure to issue the DOC 1517 and Bousley was advised that "[c]orrective action will be taken in the future." ECF No. 24 at 12. The confiscation and loss or destruction of the photographs without following the established procedures for documenting the confiscation and preserving the property therefore were not authorized.

There also is no genuine dispute that adequate state law remedies were available. Nevada Revised Statutes § 209.243 provides a means for prisoners to file an administrative claim "to recover compensation for the loss of his or her personal property, property damage, personal injuries or any other claim arising out of a tort alleged to have occurred during his or her incarceration as a result of an act or omission of the Department or any of its agents, former officers, employees or contractors." Additionally, Bousley could have filed a civil action for a state law tort. *See* Nev. Rev. Stat. § 41.0322.

Bousley contends he should not be required to file a state law claim as an exclusive remedy and he contends a small claims action would not allow him to litigate his due process claim. But Bousley misunderstands the application of the above law. Because there is an adequate post-deprivation state law remedy, Bousley has no due process claim to pursue in any forum because the state has provided all the process that is due to him through the post-deprivation remedy. Bousley also questions how a state court would value the photos, but he does not explain how that valuation problem would be any different in this court. *See Hudson*, 468 U.S. at 535 (rejecting a similar argument that because legal papers that were taken were irreplaceable or had "intangible value," a suit in tort would not fully compensate him: "If the loss is 'incompensable,' this is as much so under [42 U.S.C.] § 1983 as it would be under any other remedy.").

In sum, Alamillo and Brightwell's confiscation and loss or destruction of the photographs were unauthorized because they failed to follow procedures regarding the documentation and preservation of the alleged contraband. Additionally, Bousley had an adequate post-deprivation state law remedy. As a result, he has no due process claim as a matter of law. I therefore grant Alamillo and Brightwell's motion for summary judgment and deny Bousley's motion for summary judgment on the due process claim.

**B. First Amendment Retaliation**

In his verified complaint, Bousley states that on April 19, 2016, two other inmates told him that Alvarez told them that he had searched Bousley's cell and that if Bousley had a problem, Bousley should take it up with Alvarez and not his correctional officers. ECF No. 7 at 10. Bousley returned to his cell and found his personal property in disarray, but his cellmate's property was not disturbed. *Id.* When Sanchez and another correctional officer (named in the

complaint as John Doe) were questioned about it, John Doe stated "Do you want us to mess up your cellmate's stuff to make you feel better?" *Id.* at 10-11. Sanchez told Bousley to write a grievance. *Id.* at 11. According to Bousley, Alvarez later told him that "people need to stop writing grievances and [their] stuff won't be messed up." *Id.* Bousley alleges this conduct was retaliation for his filing a grievance against Alamillo and Brightwell for the February 2016 incident.

The defendants argue they are entitled to summary judgment on this claim because Bousley failed to exhaust his administrative remedies. Bousley contends he exhausted because the defendants addressed the claim on the merits while resolving his second level grievance related to the February 2016 incident.

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies prior to filing a lawsuit is mandatory.[3] *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). That means the inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). The inmate thus must comply "with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. But a prisoner exhausts his

---

[3] Although Bousley is no longer incarcerated, he filed the suit while he was still incarcerated, so he was required to exhaust. *Talamantes v. Leyva*, 575 F.3d 1021, 1024 (9th Cir. 2009).

7

administrative remedies "despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016).

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Consequently, the defendants bear the burden of proving the inmate failed to exhaust an available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). If the defendants do so, then the burden shifts to the inmate to show "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quotation omitted). The defendants bear the "ultimate burden" of proving a failure to exhaust. *Id.*

NDOC's grievance process is governed by AR 740. ECF No. 24 at 110-22. That process has three levels through which the inmate must proceed to exhaust: an informal grievance, first level, and second level. *Id.* at 113-18.

The defendants have met their burden of showing Bousley failed to exhaust his administrative remedies. Bousley did not file an informal or first level grievance related to the April 2016 incident. *See* ECF No. 24 at 125-58 (showing Bousley's grievance history, which does not include a grievance for the April 2016 incident). He therefore did not properly exhaust his administrative remedies for this claim.

Bousley does not argue or present evidence that he filed an informal and first level grievance or that the grievance process was unavailable to him. Instead, Bousley relies on the fact that he included facts about the April 2016 incident in his second level grievance related to

the February 2016 incident with Alamillo and Brightwell. *See* ECF No. 24 at 26. Bousley asserts that the responding official resolved his second level grievance on the merits of the April 2016 incident, so he has exhausted this claim.

However, there is no evidence that the responding official, David Tristan, addressed Bousley's complaint about the April 2016 incident on the merits. Tristan's second level response states:

> I am in receipt of your grievance and have reviewed your specific issues. The responses you were provided at the Informal and First Level have appropriately addressed your concerns. Specifically, you have grieved an inappropriate search of your cell and confiscation of property. The officers indicate that the photos that were taken were inappropriate and were [seized] as contraband. AR 422 dictates that inmate cells are to be searched on a random and consistent basis and that any unauthorized items be removed. There is not sufficient evidence to indicate that the search was improper or that the items [seized] were authorized. Staff were reminded to be respectful of inmate[']s property and to strictly adhere to AR 422. There is no monetary award. Your grievance is denied.

*Id.* at 144. Bousley contends that Tristan's statement that staff was reminded to be respectful of property is a reference to Bousley's allegation that during the April 2016 incident, his cell was left in disarray. But Bousley presents no evidence to support that conclusion. Rather, Tristan's response is focused on the February 2016 incident involving the confiscation of the photographs. First, Tristan indicates that the responses to the informal and first level grievances were appropriate. Because Bousley did not raise the April 2016 incident until the second level, Tristan must be referring only to the February 2016 incident. Tristan also refers to "an" inappropriate search and "the" search, not multiple searches. There is no indication, either from the grievance response or from any other evidence, that Tristan addressed Bousley's complaint regarding the April 2016 incident on the merits.

Bousley thus failed to exhaust his administrative remedies with respect to the April 2016 incident. Consequently, I grant the defendants' motion for summary judgment and deny Bousley's motion for summary judgment on the First Amendment retaliation claim.

Finally, Bousley filed an unauthorized amended complaint in which he added as a defendant correctional sergeant Mendez to replace the John Doe correctional officer in the First Amendment retaliation claim. ECF No. 19. This complaint was never authorized or screened, and there is no proof of service for Mendez. Mendez has not appeared in this action. Bousley failed to exhaust this claim for any defendant, so I dismiss Mendez from this action because allowing Bousley to further pursue this claim would be futile.

## II. CONCLUSION

I THEREFORE ORDER that plaintiff Antoine Bousley's motion for summary judgment **(ECF No. 29) is DENIED**.

I FURTHER ORDER that defendant correctional sergeant Mendez is dismissed from this action.

I FURTHER ORDER that the defendants' motion for summary judgment **(ECF No. 23) is GRANTED**. The clerk of court shall enter judgment accordingly and close this case.

DATED this 18th day of February, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE